JUDGE KATHLEEN CARDONE

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

FILED

2022 AUG 15 PM 1: 11

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

| | |
|---|---|
| **MABEL ARREDONDO,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| **NATIONAL TAX ADVISORY SERVICES,** | § |
| LLC a California Limited Liability Company | § |
| | § |
| | § |
| **Defendants.** | § |
| | § |

EP22CV0277

## COMPLAINT:

### Preliminary Statement

1.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2.      Plaintiff MABEL ARREDONDO ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant NATIONAL TAX ADVISORY SERVICES, LLC commissioned a series of automated telephone calls to originate new customers by calling cellular telephone numbers listed on the National Do-Not-Call Registry, like Plaintiff's number, which is prohibited by the TCPA. The calls were made from or on behalf of Defendant NATIONAL TAX ADVISORY SERVICES, LLC and at their supervision, direction, and control.

1

3.     Plaintiff never consented to receive any of these calls, which were placed to her for telemarketing purposes.


**Parties**

4.     The Plaintiff is MABEL ARREDONDO ("Plaintiff"), a natural person, resident of the Western District of Texas, and was the individual who received the alleged phone calls in this case on her private mobile telephone, and was present in Texas for all calls, in this case in El Paso County, Texas.

5.     Defendant NATIONAL TAX ADVISORY SERVICES, LLC ("National" "Defendant") is a Limited Liability Company organized and existing under the laws of California with its principal address at 16661 Ventura Boulevard, Encino, California 91316 and can be served via registered agent The Law Offices of Keith F. Elder, a Professional Corporation at 21550 Oxnard Street, Suite 630 Woodland Hills, California 91367.

**Jurisdiction & Venue**

6.     This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 556 U.S. 368, 372 (2012).

7.     This Court has personal jurisdiction over the Defendant because they have repeatedly placed calls to Texas residents with Texas telephone area codes, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

8.     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(1)-(2) in that Defendant conduct business in, and a substantial part of the events giving rise to Plaintiff's claims occurred in El Paso County, Texas, and Plaintiff was physically present and residing in Texas for all calls,

in this case in El Paso County, Texas. Defendant National conduct business in this judicial district by calling Texas consumers.

## Background

## The Telephone Consumer Protection Act

9.      The Telephone Consumer Protection Act 10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

11.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

12.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order,

18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14.     In 2013, the FCC required prior express written consent for all autodialed or prerecorded

telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it

ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer: (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e., that the
> consumer will receive future calls that deliver prerecorded messages by or on
> behalf of a specific seller; and (2) having received this information, agrees
> unambiguously to receive such calls at a telephone number the consumer
> designates.[] In addition, the written agreement must be obtained "without
> requiring, directly or indirectly, that the agreement be executed as a condition of
> purchasing any good or service.[]" In the Matter of Rules & Regulations
> Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844
> (2012) (footnotes omitted).

The National Do-Not-Call Registry

15.     The National Do Not Call Registry allows consumers to register their telephone numbers

and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47

C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the database

administrator." Id.

16.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations

to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R.

§ 64.1200(c)(2).

17.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18.    Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## Texas Business and Commerce Code

19.    The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas. Tx. Bus. & Com. Code § 302.101.

20.    Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation and reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.  § 302.302(a), 302.302(d).

21.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

22.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## Factual Allegations

23.    Plaintiff's personal cellular telephone number (915) 999-8219 has been successfully registered on the National Do-Not-Call Registry since March 31, 2022.

24.    Defendant National offers tax debt relief services to consumers who owe back taxes to the IRS.

25.     Defendant National hires and authorizes telemarketers to make illegal robocalls to thousands of consumers en mass using an automatic telephone dialing system ("ATDS") with prerecorded voice messages soliciting tax debt relief services on their behalf.

26.     Defendant National approves of the contracts with the telemarketers.

27.     Defendant National authorizes the payments to the telemarketers.

28.     Defendant National pays the telemarketers out of bank accounts they own and control.

29.     Defendant National provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

30.     Defendant National has full control over their telemarketers and has the authority to stop the illegal robocalls however has refused to do so because it benefits defendants financially.

31.     Defendant National has been sued for TCPA violations in the past on the action; *Salaiz v. National Tax Advisory Services, LLC, EP:2022-CV-00006* in the United States District Court for the Western District of Texas and refuses to curtail their behavior because violating the TCPA benefits them financially.

32.     On July 12, 2022, Plaintiff received a robocall with an automated message inquiring if Plaintiff had any unpaid taxes with the Internal Revenue Service that she would need assistance with.  Plaintiff pressed one and was transferred to a live telemarketer who took general information about Plaintiff at which point, she was then transferred to an agent named Eric Grant from Defendant National.

33.     Plaintiff advised Eric she owed back taxes to the IRS for the sole purposes of identifying the company who was responsible for making the illegal robocall to her personal cell phone.

34.     Eric then collected personal information from Plaintiff:  name, mailing address, date of birth, employment, and income.

35.    Eric then solicited Plaintiff for tax debt relief services on behalf of Defendant National and advised Plaintiff that they were going to call the IRS to get the details of Plaintiff's unpaid taxes.

36.    Plaintiff advised Eric that she was not comfortable moving forward with services until knowing who the company is and requested for Eric to send his information via email.

37.    Eric advised Plaintiff he wasn't able to send an email and instead sent an unauthorized text to Plaintiff's personal cell phone ending in 8219 from phone number (818) 479-7967 that stated, "Eric Grant- NTA Tax Advisory-818-479-7967" which then revealed the company responsible for the illegal robocall. *See Exhibit A.*

38.    Plaintiff advised Eric that she would review the information and call Eric back if she wanted to proceed with Defendant National's services.

39.    On August 3, 2022, Plaintiff received a missed call and 2 more text messages from Eric Grant.

40.    The first text message was on August 3, 2022, which stated, "Eric Grant-NTAS Tax Advisory- 818-479-7967."

41.    The second text stated, "Hello Mable, Eric Grant with National Tax Advisory here. Following up with you looks like you reached out to us a little while ago regarding some tax liability issues you were having with the IRS or State, maybe both.  Just wanted to make sure we didn't drop the ball with you, please give me a call if you are still in need of help, we can find out together if we can help you. -818-479-7967."

42.    On August 4, 2022, Plaintiff received another call from Eric Grant.  Plaintiff advised Eric she was working and advised she would call him back if interested.

43.     Plaintiff never gave her prior express written consent to receive follow-up calls or text messages from Eric Grant or any other representative from Defendant National.

44.     Plaintiff has never had any business relationship or has never been a client with Defendant National.

45.     With information and belief Plaintiff received more calls from or on behalf of Defendant National within the past two years and the true number will be revealed during discovery.

46.     Plaintiff has never heard of Defendant National prior to receiving the illegal phone calls.

47.     Defendants purposefully availed themselves of the forum state by specifically targeting Texas residents by using Texas area codes to trick consumers into thinking the calls were local.

48. Table A displays the calls made by the defendants

| | | | | |
|---|---|---|---|---|
| 1. | 7/12/2022 | 4:40 PM | 409-946-5609 | Robocall using ATDS with a TX area code |
| 2. | 7/12/2022 | 4:30 PM | 818-479-7967 | Text message |
| 3. | 8/3/2022 | 8:45 AM | 818-479-7967 | Text message |
| 4. | 8/3/2022 | 2:54 PM | 818-479-7967 | Missed call. Left voicemail |
| 5. | 8/3/2022 | 8:43 AM | 818-479-7967 | Text message |
| 6. | 8/4/2022 | 2:54 PM | 818-479-7967 | Live call |

49.     Defendant National employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

50.     The unauthorized illegal robocall on July 12, 2022 made from or on behalf of Defendant National to Plaintiff's personal cell phone was made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

51.     Defendant National does not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

52.     The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant Natinoal's registration.

53.     Defendant National doesn't qualify for an exemption under § 302.053.

54.     These telephone solicitations constituted "calls" under the TCPA that were not for emergency purposes.

55.     Defendant National never sent Plaintiff any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to info@ntastax.com.

56.     On information and belief, the Defendant National did not have a written do-not-call policy while it was sending Plaintiff the illegal phone calls.

57.     On information and belief, Defendant National did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

58.     Defendant National participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

59.     Defendant National refuses to take any action to stop or curtail the unlawful sales

practices and robocalling because these practices benefit Defendant National financially.

## VICARIOUS LIABILITY OF DEFENDANT NATIONAL

60.     Defendant National is vicariously liable for the telemarketing calls that generated the lead

for them.

61.     The FCC is tasked with promulgating rules and orders related to enforcement of the

TCPA. 47 U.S.C. § 227(b)(2).

62.     The FCC has explained that its "rules generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13

(1995).

63.     The FCC reiterated that a company on whose behalf a telephone call is made bears the

responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(b)).

64.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately

in order to obtain effective relief. As the FTC noted, because sellers may
have thousands of independent marketers, suing one or a few of them is
unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration

marks and internal quotation marks omitted).

65.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

66.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

67.     To the contrary, the FCC—armed with extensive data about robocallers and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587

¶ 36.

68.     Vicarious liability is important because reputable, traceable, and solvent companies that

benefit from illegal telemarketing are "in the best position to monitor and police TCPA

compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

69.     Defendant National is legally responsible for ensuring that the affiliates that make

telemarketing calls on its behalf comply with the TCPA when so doing.

70.     Defendant National knowingly and actively accepted business that originated through

illegal telemarketing.

71.     Defendant National knew (or reasonably should have known) that its telemarketer was violating the TCPA on its behalf but failed to take effective steps within National's power to force the telemarketer to cease that conduct.

72.     By hiring a company to make calls on its behalf, Defendant National "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

73.     Moreover, Defendant National maintained interim control over the actions of its telemarketers.

74.     For example, Defendant National had absolute control over whether, and under what circumstances, it would accept a customer from its telemarketers.

75.     Furthermore, Defendant National had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS or prerecorded voice messages to contact potential customers of Defendant National and the ability to require them to respect the National Do Not Call Registry.

76.     Defendant National also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

77.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

78.     "[A]pparent authority can arise in multiple ways, and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

79.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

80.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

81.     Defendant National is the liable party as the direct beneficiary of the illegal telemarketing calls as it stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for tax debt relief services on behalf of Defendant National.

### The Texas Business and Commerce Code 305.053

82.     The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

83.     The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

84.     The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

85.     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

86.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

87.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

88.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

**Injury, Harm, Damages, and Actual Damages as a result of the calls**

89.     Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

90.     Plaintiff has been denied the use of her phone, enjoyment of her phone, and had the functionality of her phone decreased because of unnecessary charging, erosion of phone memory, and had her privacy invaded by the harassing robocalls.

**<u>Causes Of Action</u>**

**<u>First Cause of Action</u>**

(Negligent Violations of the TCPA, "ATDS" Prohibition, 47 U.S.C. § 227(b) et seq.)

91.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

92.     Defendant called Plaintiff's cellular telephone using an "automatic telephone dialing system" as defined by the TCPA on at least one (1) occasions in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

93.     As a result of Defendant and Defendants' agents' negligent violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for herself $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

94.     Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Second Cause of Action

(Knowing and/or Willful Violation of the TCPA
"ATDS" Prohibition, 47 U.S.C. § 227(b) et seq.)

95.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

96.     Defendant called Plaintiff's cellular telephone using an "automatic telephone dialing system" as defined by the TCPA on at least one (1) occasion in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

97.     Plaintiff was statutorily damaged at least one (1) times under 47 U.S.C. § 227(b)(3)(B) by the Defendant by the telephone calls described above.

98.     As a result of Defendant and Defendants' agents knowing and/or willful violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff seeks for herself treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3

99.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Third Cause of Action

(Negligent Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)

100.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

101.    Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

102.    Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

103.    As a result of Defendant and Defendants' agents' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for herself $500 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

104.    Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff seeks injunctive relief prohibiting such conduct in the future.

### Fourth Cause of Action

(Knowing and/or Willful Violation of the TCPA
"Sales Call/DNC" Prohibition, 47 U.S.C. § 227 et seq.)

105.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

106.    Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

107.    Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by

the Defendant by the telephone calls described above, in the amount of $500.00 per call.

108.    As a result of Defendant and Defendants' agents knowing and/or willful violations

of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. 64.1200(c)(2), Plaintiff seeks for herself treble

damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47

U.S.C. § 227(c)(5).

### Fifth Cause of Action

(Violations of The Texas Business and Commerce Code 305.053)

109.    Plaintiff incorporates the foregoing allegations as if set forth herein.

110.    The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute

multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-

emergency telemarketing robocalls to Plaintiff's cellular telephone number without her prior

express written consent in violation of 47 U.S.C. § 227 et seq. The Defendant violated 47 U.S.C.

§ 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not

comply with the technical and procedural standards under this subsection.

111.    Plaintiff seeks for herself an award of at least $500.00 in damages for each such

violation. **Texas Business and Commerce Code 305.053(b).**

112.    Plaintiff seeks for herself an award of up to $1,500.00 in damages for each such knowing

or willful violation. **Texas Business and Commerce Code 305.053**(c).

### Sixth Cause of Action

(Violations of Texas Business and Commerce Code 302.101)
Failure to obtain a Telephone Solicitation Registration Certificate

113.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

paragraphs above.

114.   Defendants made at least six (6) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

115.   As a result of Defendant and Defendants' agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

116.   As a result of Defendant and Defendants' agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

**WHEREFORE, Plaintiff prays for relief against defendant, as follows:**

**Prayer for Relief**

WHEREFORE, Plaintiff Mabel Arredondo prays for judgment against the Defendant, jointly and severally, as follows:

A.   Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial.

B.   A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law.

C.   An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for 1 call.

D.   An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for 6 calls.

E.   An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.   An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Ms. Arredondo of damages, as allowed by law under the TCPA;

H. An award to Ms. Arredondo of interest and costs, as allowed by law and equity

I. Such further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

August 15, 2022

_Mabel Arredondo_
Mabel Arredondo
*Plaintiff, Pro Se*
9328 Lait Drive
El Paso, Texas 79925
Phone: (915) 999-8219

PLAINTIFF'S
EXHIBIT

A

4:44

JUDGE KATHLEEN CARDONE

**+1 (818) 479-7967** ›

EP22CV0277

Text Message
Tue, Jul 12, 4:30 PM

Eric Grant- NTA Tax Advisory-
818-479-7697

Yesterday 8:45 AM

Eric Grant- NTAS Tax
Advisory- 818-479-7967

Yesterday 2:54 PM

Hello Mable,  Eric Grant with
National Tax Advisory here.
Following up with you, looks
like you reached out to us a
little while ago regarding some
tax liability issues you were
having with the IRS or State,
maybe both. Just wanted to
make sure we didn't drop the
ball with you, please give me a
call is you are still in need of
help,  we can find out together
if we can help you.
818-479-7967

Text Message